We'll call the case of Louise Blanyar et al. v. Genova Products, Inc., Mr. Weiss. Good morning, Your Honors. I'm Saul Weiss, and I'm here to argue this morning the reversal of the District Court's commanding No. 1206 motion. Let me start by citing the court below. Mr. Weiss, do you want to reserve any time for rebuttal? I do. Three minutes. Thank you. That request will be granted. The court below committed an error with respect to the substance involved in Pennsylvania or medical monitoring, and also with respect to statute of limitations if the discovery rule applies. And the court below also committed a procedural error, because the complaint clearly sets forth a plausible theory with facts to support medical monitoring. And under that standard, it met the applicable time limit, and also fulfills the Third Circuit decision on what the standard is. Don't we have a threshold issue here to deal with of workers' contract exclusivity? Well, I'm going to get to it. We do. And that was decided on November 22, 2013, by the Suburban Court of Pennsylvania in a two-way decision. The two-way dealt with the manifestation of claims more than 300 weeks after termination of employment and said that those were excluded from the definition of injury. We have Brantley saying that medical monitoring claims are included in the definition of injury for workers' comp purposes. And Brantley also says you can't include a class action for medical monitoring under the Comp Act. A class action is just a procedural device. It's not a substantive claim. It's not a cause of action. And Brantley says how to address that. That is, they need to be brought individually in the agency forum, but they can be treated on a consolidated basis. It does say that, but that would defeat the public policy of relevant soccer. And when relevant soccer was presented in the Supreme Court decision in 1997, which followed the reasoning of the late chief judge of this circuit, Judge Becker, in Bill 1 and Bill 2, which were two medical monitoring claims involving a toxic site, the Supreme Court of Pennsylvania said the common law of Pennsylvania recognizes medical monitoring for any toxic exposure, assuming only the seven factors. But the Commonwealth Court, which we will follow as an appellate state court, unless there is clear indication that the Pennsylvania Supreme Court would decide otherwise, has said that the procedural device of a class action is not a basis to get around its holding, that medical monitoring is a covered injury under workers' comp. So I ask this question, Judge Krause, and I understand your question. If you ask for medical monitoring more than 300 weeks after you last worked at the plant, you can't bring a claim under the Comp Act. Your only remedy is to bring a claim in the Commonwealth Court of Pennsylvania. That's the holding of two. Well, it's true that if the discovery rule is in play, you have a situation that has a good analog to TUI. But that turns on whether there is implicated here the discovery rule. That is, there's a threshold determination perhaps we need to make about the statute of limitations question. But if we conclude that it was something that was known or reasonably known within those first 300 weeks, at that point wouldn't this be properly considered as a workers' comp exclusivity issue? But under Gleason, which is a 2011 Supreme Court of Pennsylvania case, that's a question of fact for the fact finder. It's not a gatekeeping function by a court under 1286 standards. That's the difference. Mr. Weiss, you agree, both sides of you agree, that the statute of limitations here has run, that you've got to make a, you've got to find an exception to keep this case alive. You either have to find a TUI exception, let's call it the TUI exception, or you have to find a discovery rule exception. Do you agree to that? Yes, sir, I do. Okay. If we don't agree with you that the TUI rule reestablished your claim, let me use that word, how do you show that the statute of limitation was told under the discovery rule? Because in order to give a claim for medical monitoring, you need to know a lot of facts, some of the facts. Perhaps today I don't know. They didn't know them before TUI? They didn't know them? They didn't know TUI. I'll grant you they didn't know the outcome of the TUI decision. Correct. No one did. But they knew certain facts. On one hand, I find it difficult to say that an employee has to assume that their employer is using a chemical, which is a toxic chemical, at a level beyond which it's safe. I have trouble with that concept to say that the employee should know that. But in this case, there were certain facts that they were made aware of during the time of their employment. And at least as to these named plaintiffs, the last day of employment for one of them was 2006. Which was still 300 weeks. Yeah, but that's TUI. Yeah. That's TUI. I'm saying TUI. If TUI doesn't make your exception, tell me how the discovery rule does. Certainly. So why don't we look at the Gleason case in 2011. In 1993, the Gleason family home in Moosick, which is halfway between Buscar and Scranton in northeast Pennsylvania, began to have a number of floods. And the floods were caused because in 1993 they were changing the public sewer system. We're familiar with the case. But the holding there, part of the reasoning was that the dangers associated with toxic mold were not widely known. In contrast, on the face of the complaint here, you've laid out how going back to the 1980s, the risk of exposure to PVC and the other chemicals you identify was widely known. Not only in medical journals, but in footnotes 11 and 12 of the complaint, you're referencing trade journals and environmental journals. It's an issue of fact as to whether the municipalities knew of those trade journals. They didn't. It's not a subjective question. It's whether the representatives or the class members could reasonably know. I think that's a question of fact, though, Judge Krause. It's not a matter of law. And there can be differences that a jury has to determine who knew what and when and where. What do we do with the fact that the complaint are references to these dangers being widely known back into the 1980s? If we didn't leave that in the complaint, we would not meet a threshold burden of setting out a medical monitory claim on relevant software. How is it, and there's also no specificity in terms of how you were awakened in the interim to the injuries here. You recently obtained the material safety and data sheets, but there is no indication of how or why, whether it was even within the last two years and the circumstances, why it wasn't possible before. And you declined the opportunity to amend, to add additional facts before the district court. Well, and the reason, with all the facts that we knew, we pled. We have no other facts to offer on those issues. And once again, that raises factual issues. You don't know how the data sheets came into your possession? That's not what I understand the court asked us to amend the complaint for. My understanding is the court asked us, did we have any technical information? All we had is what we gave the court. So, amending the complaint would have been futile. We believe we set out in comprehensive fashion all the facts necessary to fit the seven factors of relevant software, to what monitoring is appropriate. And these are not the injuries. These are people who are not injured. What are the facts that establish that this was not reasonably known with reasonable investigation until some point within two years before your filing of the complaint? None of the plaintiffs knew what the exposure levels were. Phenylchloride or PVC or styrene or any other of the toxicants at the plant. What additional information did they obtain within two years of filing of the complaint that was not available earlier? They still don't know and we need discovery to find out whether the plant did air sampling or other testing to determine whether the levels of exposure exceeded that set out by the government. We don't know that information. We don't have it. So, there's no way they would be informed. Are you saying you don't know and don't have the information as to whether they were even exposed at greater than normal background levels? Correct. We knew that from the plant. We don't have that information. It wasn't posted at the plant. We don't have it. Let's take a step back again. We agree that the statute of limitations for medical monitoring is two years. Yes, under Barnes. Under Barnes. Which was decided at summary judgment after discovery, extra reports and a lot of depositions were taken. Okay. Two years from when? Two years when we require enough information to be informed that you should ask for it. Not two years from your first exposure. Correct. Okay. So, in essence, you're saying here, in order to make these complaints, once again saying to you, if your two-league argument doesn't fly, in order to make these complaints within the statute, you essentially are saying that you didn't find out until 2013. 2013 is when these plaintiffs had the opportunity to file a class action for medical monitoring because it didn't exist before the two years. Okay. So it was either the fact that it didn't exist and they filed it at that point. They filed it within two years of November 22, 2013. Your red light is on, but one other question. Sure. It goes to what Judge Cross deemed as perhaps the threshold issue, the exclusivity at workers' comp. Do your clients still have a medical monitoring claim that they could make in workers' comp if, in fact? No. Why not? Because under 301C, you can't bring any claim if you've been out of work more than 300 weeks in the time you were employed. That's if the injury occurred and you knew of the injury or had reason to know it within that time frame, that's to say that the statute of limitations has run for workers' comp. I'm sorry. I'll say it again, Judge Cross. I didn't understand your question. Is that to say that the injury, that is the injury of exposure and creation of the rest, that occurred, as you've postulated, it occurred within 300 weeks of? Yes, to answer your question. And if you had reason to know of the claim and could have brought it within that time frame, then it would be time barred as a matter of workers' comp law. Now, if you had reason to know that your exposure was at a certain level within 300 weeks of your working at the plant, you couldn't bring a claim to medical monitoring as an individual under the compact. And if you didn't, if you waited until after those 300 weeks, then it's barred under workers' comp law. Correct. So if you didn't get the knowledge within 300 weeks, you're time barred. And that's where TUI comes in. And TUI says that's not the public policy of Pennsylvania. The public policy of Pennsylvania is give the worker an opportunity to bring a claim. If you can't bring it under the compact, you bring it under common police, under common law, and the defendant inquires every defense who will know they have it. Can we step back for a second to your earlier answer? If you're saying that you still don't have a basis for the allegation, if it's a necessary element for a medical monitoring claim, that there was exposure to greater than formal background levels. We don't have that information. We only know that they were exposed to monocloride and other chemicals. We don't know what levels and to what duration and where on the planet. Why doesn't that go to the alternative ground in the district court of failure to adequately plead a claim? That is, don't you need the specificity under Iqbal and Twombly of some factual allegations supporting that you can satisfy the elements of the claim? No, I think under Iqbal and Twombly, and as articulated in the Phillips case in the Third Circuit, once you say you've been exposed and you know what the limits are, it's plausible that you can make a claim now. And that's all that the pleadings require, plausibility, not uncertainty. This is not a trial of the merits. But it requires more speculation as well. What beyond speculation do you base the complaint on? They were exposed to monocloride, and monocloride is known to be a carcinogenic agent. And we've listed in paragraph 61 through 67 all the types of cancers that are associated in the literature with monocloride exposure. Okay. All right. Mr. Weiss, we'll have you back at the bottom. Mr. Baghdadi. Good morning, Your Honors. May it please the Court, Justin Baghdadi on behalf of P. Genoma Products. Your Honors, this is not a TUI case. TUI applies to individuals who have manifested an occupational disease. They actually are sick, and that disease did not manifest until more than 300 weeks after their last day of employment. But isn't this a close parallel to TUI if what we have, if we conclude that the discovery rule does apply here, and we were presented with a basis to conclude that they, or the district court was, that these plaintiffs couldn't reasonably have known about their claim until some point within two years of their filing, wouldn't this then be outside of the scope of the injury given the time bar of workers' comp? Workers' comp is just a straight-up occurrence rule, right? So if the discovery rule applies, it would seem by its terms outside of the scope of injury in the very same way that TUI was. Well, so it's a wholly different injury that these plaintiffs and proposed class members have brought a claim for. So medical monitoring, your injury is the exposure itself, which has placed you at a significantly increased risk of contracting a serious latent disease. That's your injury. And you haven't gotten sick, and in fact, if you have gotten sick, you can bring a medical monitoring claim. You're precluded from doing that. Your injury in those circumstances, if you do get sick, is the disease itself that you got. And the problem TUI was addressing was instances where, and asbestos is the sort of most common one, and that's what was at issue in TUI and other cases, but the injury is latent. It doesn't actually manifest until much later, and that's where the 300-week provision and the definition of injury comes in in the workers' compensation statute. In 301C, there are two different definitions of injury, and readily focuses on 301C in line in all the cases interpreting that definition of injury, which is the much broader, more general definition of injury. It encompasses all work-related harm. So are you saying that if they can't bring this medical monitoring case under TUI, but if all of a sudden, two years from now, these named plaintiffs and 10 others all came down with cancer, they could bring a TUI claim at that time? Yes, and it would be for a different injury. That's a wholly different injury than what they've seen from you. So they're not allowed to seek medical monitoring, even though medical monitoring has been recognized by the Pennsylvania Supreme Court and acknowledged by our court in Barnes. But you have to wait until the cancer exhibits itself. No, Your Honor. So they can bring the medical monitoring claim in the workers' compensation system, and they always could have. Can they still bring it? Well, there would be a statute of limitations question, and there would be a discovery rule issue there. But they could have, Your Honor, is the point. They could have up to three years because it's an occurrence rule. But if the discovery rule would put them beyond those three years, then why aren't we right back in the land of TUI? That is the reasoning of the court, that one place or the other, there needs to be availability of relief. Well, so that is the problem TUI was addressing, although it wasn't in the medical monitoring context at all. Different section, different injury, but we have the same concept of what is effectively a statute of limitations, a time bar that can be viewed as circumscribing what the injury is. Sure. So I think your answer is that it's part of the tradeoff with the Workers' Compensation Act. This fact pattern could apply not just to medical monitoring, but to any claim that you may have that's a workers' comp claim, but there's some sort of discovery rule issue. And I don't think there's a reason to apply the discovery rule here in the first place, but we'll put that aside for a second. I think what you're suggesting is if there's a workers' comp injury, when you have a discovery rule issue in that particular case and now all of a sudden you haven't discovered it and couldn't have discovered it with diligence until several years later, that's not specific to a medical monitoring question. That's any workers' compensation injury, I think, where you have a discovery rule issue. And the fact that workers' comp is a occurrence-based regime, I think it's part of the balance that was part of the tradeoff when that's behind workers' compensation in the first place. There's supposed to be limitations to the claims that are compensable under the Workers' Compensation Act. And certain claims are given up that could otherwise have been brought in state court in exchange for the workers' compensation system in the first place. I'd also like to talk about this concept that TUI created at the start of the clock, that when TUI was decided in November of 2013, that's when the statute of limitations began, which doesn't apply here in the first place because this isn't a TUI claim. But if that weren't true, if TUI somehow starts the clock ticking for a claim, that would, in effect, reach back into time and say, regardless of when the conduct occurred, regardless of whether you preserved your claims or investigated them or anything, you can now move into TUI and bring this cause of action. It doesn't apply in a sweeping, retroactive manner like that under Pennsylvania law. And that's, in effect, what the argument proposed by Mr. Weiss would do. I'd like to get back to questions that were asked by Judge Krause and Judge Fischer, and that is the medical monitoring claims being advanced here, are they now foreclosed in the workers' compensation setting because of the passage of 300 weeks? So the 300-week issue is unrelated to this question. I sort of want to try to find out. Right. So they're wholly distinct. So the 300-week provision that's a subject of TUI, that's all about 301c2, which is the other definition of injury in the workers' compensation statute that applies to occupational diseases. A medical monitoring claim isn't a claim for an occupational disease. If you look at Brenley, again, they're looking at 301c1, which is the more general definition of injury. Section 602 provides for a three-year statute of limitations for those kinds of injuries that would include medical monitoring, correct? That's the statute of limitations. I'm trying to decouple it from the 300-week issue, though, which is fairly applicable. Let's follow up on Judge Krause's question on the three-year statute of limitations. Is that subject to a discovery law? My understanding is that there is a discovery provision in the workers' compensation system. But, you know, the key point here, Your Honors, is that whatever the right analysis is, it belongs in the workers' compensation regime. It's not, you know, this is a workers' compensation claim, and there's no basis to it. If there is any other claim, I'm sorry, Judge. No, go ahead. Like any other claim would be subject to a three-year statute of limitations, and you don't get a common law cause of action because it's barred by the statute of limitations. I'm sorry. The key point here, Your Honors, is that whatever the statute of limitations analysis is, it's a workers' compensation statute of limitations analysis that this isn't the right place to have that. But Section 602 is, by its terms, it's simply an occurrence rule. It doesn't provide, at least by its terms, except for injury resulting from ionizing radiation, which the nature of the injury is relationship to employment is not known to the employee. Aside from that very narrow exception, it doesn't provide a discovery rule. Is there some other discovery rule in workers' comp or in the case law that you're referring to? Unfortunately, I don't have a case I can cite to you as I stand here right now. But it is my understanding that there are cases where the discovery rule can apply in the workers' compensation context. But, again, I truly do think the key point is that that's where this case belongs, and whether it's timely in that form or not, that's the form for it. There's nothing that gives a right to bring this claim outside of the workers' compensation. But if it isn't timely and if there isn't a claim, doesn't that re-trigger the TUI claim? You essentially started out, this is not a TUI case. Correct. You said it's a workers' compensation case. Yes. Okay, if because of the passage of time, it's no longer a workers' compensation case, does that now make it a TUI case again? No, no, because the reason it's not a TUI case is because it's about a completely different injury. TUI is only about an occupational disease that manifests. Right. These individuals have not manifested anything and they may never have no reason to think they will. It's a wholly different injury that they're... So the injury for these individuals occurred at the moment of exposure. Whatever the moment of exposure was that put them at this significantly increased risk... All right, let's go down another line. Sure. Under Barnes, okay, under Barnes, when should these employees have asked for medical monitoring? At the moment, within two years. Of what? Of the moment that each individual was placed at a significantly increased risk of contracting a serious disease. And what does that mean? It would be a different answer for every single one of these people. Okay. And again, we don't think any of them were exposed at a dangerous level, but they would require an expert to come in and say, this person worked in this particular job for eight hours a day. Isn't one of these nameplates a flance, a bookkeeper? I don't know if one of them is a bookkeeper, but there certainly were back-office employees at the plant. Some of these were back-office employees. Well, one of them was a packer who took the finished product, which is PVC pipe that's in my house, it's probably in this building, it's at the store, and it's not dangerous, and took the finished product and put it in the boxes and sent it out the door. They were not involved in the actual manufacturing of the pipe that's helpful in just taking the finished product. I have a question. When did they know? I mean, when did they know? When did this two-year clock start running? When should they have known? Well, right, so could have known, I think, is the right question. Could have known, you're right. Right. And, again, it will probably differ for each of these people, but the key thing that Judge Magan focused on, which I think is the right question, which is they know now because they bought their claim in 2015. What is it that happened during the two-year period prior to when they filed that is new information that came to light that they could not have known before? What happened between May 2015 and May 2015? What's new? What was suddenly revealed to them? And there isn't anything, Your Honor. Well, there is, too. Well, sure, and I think that's what happened. And there was a thought that maybe we can come up with a new degree of class action after two years was filed. Should we certify to the Pennsylvania Supreme Court the exclusivity issue? I don't. I think to me it's clear on its face that it's about a wholly different question than the issue that's in front of this Court, and I think the Court can decide it right now without going through that process. Why haven't you waived the question whether workers' comp exclusivity applies here? Where was that argued in the district court? So it's true that there was a section in our brief below that laid out that argument as it's laid out in our briefs here. We didn't cite the argument or apply brief below for the point that medical monitoring is compensable. It did raise it in our argument below, but it is true that we didn't make the argument explicitly. So why isn't it waived? It's not waived because, first of all, the Court can inform the district court for any reason supported by the record, and this is a pure legal argument. It depends on nothing except the complaint itself. There was no factual development of the record required at all. It's also a jurisdiction question that can be raised at any point. You're not suggesting it's a jurisdictional question for us, are you? Not in public jurisdiction, Your Honor, no. Even for federal jurisdiction? I mean, it may be a jurisdictional matter in the state court, but are you suggesting that federal diversity jurisdiction is circumscribed by exclusive agency provisions? So there is a third circuit case, Wallace v. UPS. Let me pull the site for that for you. 387 Federal Appendix 127 from this court in 2010. Say that site again, I'm sorry. So it's Wallace v. UPS 387 Federal Appendix 127 from this court in 2010, and it's in footnote 2 of that opinion, and it's in with the New Jersey Workers' Compensation Statute, but that footnote says that the question of whether a claim is exclusively within the province of the New Jersey Workers' Compensation System is a matter of subject matter jurisdiction. That's a non-presidential opinion? That's true. We've never said that presidentially. Not that I've seen. A number of other courts that have addressed this question have concluded that it is not a matter of federal jurisdiction. It would be treated as a matter of failure to state a claim, but not something that can curtail diversity jurisdiction as prescribed by Congress. Do you agree with that, or are you arguing that it affects our subject matter jurisdiction? I haven't read those cases, and I'm not familiar with the cases you're referring to, but I do think the court has subject matter jurisdiction, and that this issue can be addressed under 12b-6 without even getting into subject matter jurisdiction. Actually, the Irving Irwin's case, a judge came in and decided very recently, dealt with this exact issue and came up with the exact right answer, and dismissed under 12b-6 without ever getting into jurisdiction. So I certainly think it can and should just be dismissed on the failure to state a claim grounds. That's, I think, appropriate here and certainly much clearer in getting into the jurisdiction question. One other question on the discovery rule. Why shouldn't the question of the applicability of the discovery rule under these facts here be submitted to a jury? Well, Your Honor, we have a complaint that's time-barred on its face, and we have no reason to believe it. You can make that statement. It's easy to make that statement that it's a complaint that's time-barred on its face, but it isn't the underpinnings of why you can even make that statement. A whole host of factual questions as to what information was provided to these employees, when that information was provided to these employees, and whether that information was provided to these employees at all. I mean, aren't those factual questions that are best left up to the jury rather than having a court, a district court, determine and us affirm this question as a matter of law? I don't think so, Your Honor. And one of the things we have here is there's all of this publicly available information. These studies, going back to the 70s and a little earlier than that, we had the Oakshire regulations that came out in 1974. There's a wealth of information out there about the risks of working with this material. And, you know, even so, all of that was knowable by these individuals. There's no reason it wasn't knowable by any of these people in the exercise of diligence. And that is plain from the face of the complaint itself that cites a lot of these materials. And as Judge Maiden correctly, I think, held, they worked at a PVC plant. These studies are all about the risks of PVC and VC. They were all out there available to them at any time. And, again, it is a time of our registration. I say that because the plant closed in 2012, so whatever happened, it stopped in 2012. And here's the last nitty-gritty for which I complained, again, was in 2006. But nothing occurred after the plant closed. And they didn't file for three years after that date. Well, they do make the allegation that these data sheets were required to be disclosed to employees, that they were not, and that they only, quote, recently came into possession of them. Now, we don't know what time frame that is from the face of the complaint. But why isn't it a fair inference that that was within the last two years? And is the data on those sheets sufficient to awaken the claim under state law? Well, so I haven't seen the sheets. The only one in the room who has seen the sheets is probably Mr. Weiss. The ones attached to those exhibits to the complaint, isn't it? There were some. I don't know if they're the same ones they have or not. I'm sorry, they're not attached to the exhibit, to the complaint. No, there was nothing attached to the complaint. There are a couple in the record for this court. We submitted those. Most of them are publicly available. You can go online and find MSDS sheets. And there are a couple that we attached to a brief below, and we submitted in the appendix here, in the supplemental appendix. Those are examples of MSDS sheets that actually were available to the employees in Hisleton. We have the actual books, and that's a small excerpt. I didn't attach the whole thing. It would have been yay high. But that's a small excerpt of the actual sheets. But those came from us. They haven't attached whatever sheets they have. They haven't told us when they got them, which I think is key. If that's going to be their basis for asserting a timely claim, and I don't see how it could be, but if it is, they have to at least plead when they got them and what they say and what chemicals they relate to, what products they relate to. When they relate any of this information, we have none of it. And what MSDS sheets say generally is they convey what's already publicly available information. Here's what to do with the kits in your eyes. Here's the right temperature to maintain that. Here's how to properly handle it. And, again, I don't know what these would say because they haven't shown it to us and won't tell us what they say, but they wouldn't say something like, you are being exposed at this particular level, and, you know, our process means that you are, you know, at risk of this. It's general safety information about how to handle materials. But most importantly, you know, we haven't seen them. We don't know what they say. Okay, Mr. Big Daddy. We thank you. Thank you very much. For your presentation, and we'll have Mr. Weiss back for a short rebuttal. Could I briefly discuss the Smith case that was just decided by Judge Cahoney's Alejandro? Smith versus American Airlines said two didn't apply because the plaintiffs were still employed by American Airlines, and TUI says you have to be out of work for 300 weeks for the benefit of TUI. So she was correct. They were present employees and they had their contracts. I want to touch, if I can, on the sexual limitations issues under the contract, and Judge Krauss and Judge Fischer and Judge Gnansky are right. There's a three-year hard statute, 156 weeks to bring a claim, except for occupational injury because they're late, and late-developing diseases, you have 300 weeks. And to make it clear, TUI could address that, and TUI said, we're not going to shut out the plaintiffs from their common law rights if their claim manifests after the statute of limitations period, we'll buy them into the combat. And I believe you can find that, it's on page 28 of the Lexis opinion. But if we're not persuaded that the discovery rule applies here or that you've adequately pleaded the claim, then whether it's a matter of a time bar under workers' comp, and workers' compact flexibility, or a time bar under common law, the claims couldn't proceed, right? I still believe that's a question of fact and there's been no discovery. So let's, but do you agree with that premise? The question of a time bar, if we're not persuaded that the discovery rule applies, then whether it's a time bar under workers' comp or a time bar under common law, either way the claim couldn't proceed. In other words, it's the threshold question, the time bar question. And I agree with you. It's our opinion and we believe that they still don't have all the operative facts to conclude as a matter of law they should have known earlier, two years before the complaint was filed. And that goes back to the Gleason case. They had hard evidence five years before they filed the complaint and then the Supreme Court said it was wrong to grant summary judgment because a reasonable jury could differ as to what they really know when they know. Let me ask you a question Judge Van Aske touched on. On the workers' compensation exclusivity question, should we be certifying this question to the Pennsylvania Supreme Court? And if we should, why haven't you asked for it before this? I don't think you have to, Judge Fischer. I think the Supreme Court was pretty clear what the public policy in Pennsylvania was and that's why they came out with Tuohy. Okay. But if the court wishes them to do so, they can. I don't think you have to, but that's up for the panel to decide what to do. Okay. All right. Thank you. Thank you, Judge. We thank counsel for excellent arguments on all the points and we'll take the matter under advice. Thank you.